## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ROBERTO HONEYCUTT,

            *Petitioner*,

vs.                                      Case No. 08-3039-EFM

DAVID McKUNE, et al.,

            *Respondents*.

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Roberto Honeycutt's ("Petitioner") Motion for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, in which he seeks to have his state conviction overturned. Petitioner argues his state conviction is unconstitutional because of ineffective assistance of trial counsel and prosecutorial misconduct, each of which precluded his receiving a fair trial (Doc. 1). Having carefully reviewed the arguments of the parties, the Court DENIES Petitioner's motion.

### I.  Factual and Procedural Background

On July 8, 2000, a masked black male entered the Lee Jewelry Design store, located in Mission, Kansas, and robbed the store owners using what they perceived to be a gun the perpetrator was holding under a red rag. Present in the store at the time of the robbery were the owners, Larry and Sharon Lee, and their 10 year old son. During the robbery, the robber took cash, jewelry, and other merchandise. As the robber was preparing to leave the store, he removed his mask. Ms. Lee

interrupted the robber and asked him if he would return the checks, credit cards, and charge slips he had taken, at which point the robber turned around to face Ms. Lee, giving her a full frontal view of the his face.  After exiting the store, the robber ran to, and left the area in, a red Oldsmobile.  Mr. Lee followed the car and was able to obtain its license plate number, which police later found to be registered to Petitioner's girlfriend, Ms. Monica Pacheco.

During trial, Petitioner testified that he had possession of Ms. Pacheco's car, but prior to the robbery on July 7, 2000, he had given the car to Chris Cheney, an acquaintance of his from barber school, to fix the brakes.   Petitioner claimed that Chris Cheney returned the car to him at a hotel where Petitioner was currently staying the following day after the robbery.

Ms. Lee positively identified Petitioner as the robber from a photo lineup shortly after the incident, and identified him again during trial.

Petitioner was convicted by a jury on January 30, 2001, in the District Court of Johnson County, Kansas, of one count of aggravated robbery and two counts of kidnapping.  He was sentenced to a total period of 216 months imprisonment.  On direct appeal, Petitioner claimed that the prosecutor violated his right to a fair trial when he elicited inadmissible evidence regarding his post-arrest, post-*Miranda* silence, and by asking questions without a good faith basis in an attempt to discredit Petitioner.  Petitioner did not argue ineffective assistance of counsel in his direct appeal. The Kansas Court of Appeals affirmed Petitioner's aggravated robbery conviction, but reversed his kidnapping convictions.[1]  On July 9, 2003, the Kansas Supreme Court denied Petitioner's request for review of his direct appeal.

---

[1]*State v. Honeycutt*, No. 87497, slip op. (Kan. Ct. App. Apr. 25, 2003).

Pursuant to K.S.A. § 60-1507, Petitioner filed a motion for post-conviction relief in the District Court of Johnson County alleging ineffective assistance of counsel and prosecutorial misconduct.  Upon denial of his state habeas motion, Petitioner filed an appeal with the Kansas Court of Appeals.  The Kansas Court of Appeals affirmed the trial court's denial of relief on Petitioner's motion, and the Kansas Supreme Court denied review.[2]  Petitioner subsequently filed for federal habeas corpus relief with this Court in which he alleges ineffective assistance of counsel and prosecutorial misconduct.

## II. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 2254 and 28 U.S.C. § 1331.

## III. Exhaustion

Prior to ruling on the merits of a petitioner's claims, the Court must first determine if Petitioner exhausted claims at the state level.  "The exhaustion requirement is satisfied if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a post-conviction attack."[3]  The federal claim must have been "fairly presented to the state courts" to the extent that the state courts had "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights."[4]  "'Fair representation' means that the petitioner has raised the 'substance' of the federal claim in state court," not that the petitioner cited "book and

---

[2]*Honeycutt v. State*, No. 93666, 2006 WL 2716028 (Kan. Ct. App. Sept. 22, 2006), *rev. denied* (Feb. 14, 2007) (Unpublished Opinion).

[3]*Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994); 28 U.S.C. § 2254.

[4]*Picard v. Connor*, 404 U.S. 270, 275 (1971).

verse of the federal constitution."[5]

In the instant case, Petitioner filed a direct appeal with the Kansas Court of Appeals following his state court conviction in which he raised prosecutorial misconduct claims virtually identical as those raised in his federal habeas petition.  The Kansas Court of Appeals affirmed Petitioner's state court conviction.  Petitioner subsequently requested review by the Kansas Supreme Court, which was denied.  Petitioner raised the remaining ineffective assistance of counsel claims in his post-conviction hearing, which the Kansas Court of Appeals affirmed, and the Kansas Supreme Court denied review.  Petitioner has exhausted his claims at the state level.

### IV. Standard of Review

This court's consideration of collateral attacks on state criminal proceedings is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).[6]  Pursuant to the deferential standard set forth by the AEDPA, a federal habeas court may grant relief to a petitioner's claim that has been decided on the merits in state court if the state court decision: (1) was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[7]

A state court decision is "contrary to" Supreme Court precedent when: (1) "the state court applies a rule that contradicts the governing law set forth in [a United States Supreme Court] case";

---

[5]*Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006).

[6]*Martinez v. Zavaras*, 330 F.3d 1259, 1262 (10th Cir. 2003).

[7]28 U.S.C. § 2254(d)(1) & (2); *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003).

or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the United States Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."[8]   A state court's decision is an "unreasonable application" of Supreme Court precedent if "the state court identifies the correct governing legal principle from Supreme Court's decisions but unreasonably applies that principle to the facts of a prisoner's case."[9]  Thus, "[u]nder § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.[10]  We also presume the state court's factual determinations are correct and the petitioner bears the burden to rebut the presumption by clear and convincing evidence.[11]

## V.  Analysis

Petitioner asserts that the prosecutor committed misconduct during the trial, warranting reversal of his conviction.  Petitioner alleges the prosecutor improperly questioned Petitioner's girlfriend about his post-arrest, post-*Miranda* silence.  He claims the prosecutor further committed misconduct by arguing to the jury during closing that Petitioner's silence was the central issue in the case.  Lastly, Petitioner claims misconduct because the prosecutor argued to the Kansas Appeals Court that there was no issue concerning questioning regarding Petitioner's post-arrest, post-*Miranda* silence during trial because the jury was unaware that Petitioner asserted his right to remain

---

[8]*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

[9]*Williams*, 529 U.S. at 413.

[10]*Id.* at 411; *see also Thomas v. Gibson*, 218 F.3d 1213, 1219-20 (10th Cir. 2000) (discussing *Williams*).

[11]28 U.S.C. § 2254(e)(1); *Fields v. Gibson*, 227 F.3d 1203, 1221 (10th Cir. 2002).

silent.

Petitioner also argues that his state court conviction is unconstitutional because of ineffective assistance of trial counsel.  This claim is based on trial counsel's: (1) failure to object when the prosecutor elicited testimony concerning Petitioner's post-arrest, post-*Miranda* silence from a witness; (2) failing to object when the prosecutor argued to the jury at closing that Petitioner's post-arrest, post-*Miranda* silence was the sole issue in the case; and (3) failure to object to the foregoing which resulted in the Kansas Court of Appeals accepting the prosecutor's statements in closing argument.  The Court addresses each of Petitioner's claims in turn.

## 1. Prosecutorial Misconduct

### a. Doyle Violation

Petitioner claims that the prosecutor violated the Supreme Court's holding in *Doyle v. Ohio*[12] through the manner in which he questioned Petitioner's girlfriend, Ms. Pacheco, thereby violating Petitioner's due process rights.  A *Doyle* violation occurs when a prosecutor seeks to cross-examine a defendant regarding his post-arrest, post-*Miranda* silence in an effort to impeach the defendant's exculpatory story introduced for the first time at trial.[13]  Petitioner argues that the prosecutor improperly implied through direct examination of Ms. Pacheco, that had Petitioner given the car to Chris Cheney, he would have told that fact to the police at the time of his arrest.  Because Petitioner did not mention the name Chris Cheney to the police or ask Ms. Pacheco to either find Mr. Cheney or inform police about him, Petitioner was fabricating the proffered defense.

---

[12]426 U.S. 610 (1976).

[13]*Id.* at 613-14.

Petitioner focuses on the following dialogue that took place between the prosecutor and Ms. Pacheco during trial:

> Q.  Did he ever indicate to you you needed to go contact the police to hunt down a man by the name of Chris Cheney?
>
> A.  No.
>
> Q.  To prove that your boyfriend did not commit this robbery?
>
> A.  No.[14]

Prior to and after this exchange, the prosecutor asked Ms. Pacheco if she had ever heard of Chris Cheney, whether Petitioner ever mentioned Chris Cheney to her as a person he attended barber school with, and whether she personally knew Chris Cheney.  Ms. Pacheco answered "no" to each of these questions.[15]

In *Doyle*, the Supreme Court has held that introducing a defendant's post-*Miranda* silence at trial violates due process principles.[16]  *Doyle*, however, dealt with a prosecutor impeaching a defendant regarding his post-arrest, post-*Miranda* silence rather than questioning a non-party as the prosecutor did in the present case.[17]   The Supreme Court reasoned that it would be fundamentally unfair "to call attention to [a defendant's] silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time . . . " that a negative inference should be drawn from that silence.[18]

---

[14]Trial Tr. vol. 1, 165, Jan. 29, 2001.

[15]Trial Tr. vol. 1, 164-65, Jan. 29, 2001.

[16]*Doyle*, 426 U.S. at 618-20.

[17]*See id.* at 613-14.

[18]*Id.* at 619; *see also Earnest v. Dorsey*, 87 F.3d 1123, 1135 (10th Cir. 1996) (citing *U.S. v. Canterbury*, 985 F.2d 483, 486 (10th Cir. 1993)).

On federal habeas review, once the Court determines that a *Doyle* error has occurred, it must then determine whether the error "had substantial and injurious effect or influence in determining the jury's verdict."[19]  This standard applies regardless of "whether or not the state appellate court recognized the error and reviewed it for harmlessness . . . ."[20]  If the Court is in "grave doubt" about the likely effect of the error on the jury's verdict such that "the matter is so evenly balanced that [the Court] feels [itself] in virtual equipoise as to the harmlessness of the error," it must treat the error as if it had a "substantial or injurious effect."[21]

Because Petitioner did not object to the prosecution's questioning during Ms. Pacheco's testimony, the Kansas appellate courts declined to review Petitioner's claim of a *Doyle* violation. This Court, therefore, must first determine whether the prosecutor committed a *Doyle* error, and if so, decide if that error had a substantial or injurious effect or influence in the jury's verdict.

In the present case, instead of impeaching Petitioner during cross-examination as to his defense theory introduced at trial, the prosecutor questioned Petitioner's girlfriend, Ms. Pacheco, during the State's case-in-chief.  During Ms. Pacheco's testimony, the prosecutor inquired into her knowledge of Chris Cheney and whether Petitioner ever spoke to her about Mr. Cheney.  The prosecution questioned neither Petitioner nor Ms. Pacheco as to why Petitioner *himself* failed to speak with police about Mr. Cheney, but rather, focused his questions to Ms. Pacheco on what Petitioner *told her* or *directed her* to do.

---

[19]*Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 766 (1946)).

[20]*Fry v. Pliler*, 551 U.S. 112, 127 S. Ct. 2321, 2323 (2007).

[21]*O'Neal v. McAninch*, 513 U.S. 432, 435 (1995); *see also Turrentine v. Mullin*, 390 F.3d 1181, 1189 (10th Cir. 2004) (discussing the *Brecht* and *O'Neal* standards).

Petitioner argues that the Supreme Court's holding in *Doyle* not only applies to impeaching a defendant during cross-examination on his post-*Miranda* silence, but extends to examining third persons when that questioning could relate back to a defendant's post-*Miranda* silence. Deciding whether *Doyle* is applicable requires a case-by-case review of the specific questioning employed by a prosecutor during trial. Based on the prosecutor's line of questioning in this case, we cannot agree with Petitioner.[22]

After reviewing the record, the Court finds that the prosecutor did not commit a *Doyle* error. The Court cannot extend the Supreme Court's holding in *Doyle* beyond the issue presented in that case in the absence of any legal authority to do so.[23] This Court has not found, and neither Petitioner nor Respondents have provided, any court decision extending *Doyle* to a prosecutor's questioning of a non-defendant about statements a defendant may or may not have made to that witness regarding the defendant's exculpatory theory. Although Petitioner relies on *Commonwealth v. Johnson*[24] to support his argument, that holding simply does not extend *Doyle* so as to apply to the facts of this case.

In *Johnson*, the defendant asserted his right to remain silent and presented an alibi defense at trial. The defendant did not testify. The prosecutor, in examining the defendant's fiancee, did not inquire into why the defendant may or may not have made any particular statements to his fiancee. Instead, in using the witness to impeach the defendant's alibi defense, the prosecutor asked

---

[22]*See Doyle*, 426 U.S. at 617-19.

[23]In *Doyle*, the issue was "whether a state prosecutor may seek to impeach a defendant's exculpatory story, told for the first time at trial, by cross examining the defendant about his failure to have told the story after receiving *Miranda* warnings at the time of his arrest." *Id.* at 611.

[24]788 A.2d 985 (Pa. Super. Ct. 2001).

whether *the defendant* "could have just told the police" at the time of his arrest how the police could confirm his alibi.[25]  This line of questioning is clearly distinguishable from that which took place in the instant case.

Here, Petitioner asserted that he was not present during the robbery and that Mr. Cheney committed this crime.  The prosecution, seeking to disprove Petitioner's defense, inquired into Ms. Pacheco's knowledge of Mr. Cheney.[26]  The prosecutor asked Ms. Pacheco, not Petitioner, whether Petitioner ever told *her* about Mr. Cheney,  if *she* knew Mr. Cheney, or whether Petitioner ever asked *her* to speak to the police about finding Mr. Cheney.  The Court has found no instance where the prosecutor commented on Petitioner asserting his right to remain silent, nor did the prosecutor state that Petitioner himself should have made any statements to the police.  While it is undisputed that Petitioner was read the *Miranda* warning and that he invoked his right to remain silent, that fact was not presented to the jury.[27]   Petitioner's argument that the prosecutor's questions placed the issue of Petitioner's silence before the jury is tenuous at best, and we are not convinced that the issue of Petitioner's post-*Miranda* silence had any effect on the jury's decision.[28]  Therefore, based on the foregoing, the Court finds that the prosecutor did not commit error under *Doyle*.

---

[25]*Id.* at 989 (emphasis added). In its ruling, the Pennsylvania court discusses a number of state cases applying the *Doyle* rule, all of which turn on the prosecutor posing questions either to the defendant or another witness as to why the *defendant*, after invoking *Miranda*, did not inform *the police* regarding a defense presented during trial.  *Id.* at 988-99 (discussing facts of *Commonwealth v. DiPietro*, 648 A.2d 777 (1994)*; Commonwealth v. Turner*, 454 A.2d 537 (1982); *Commonwealth v. Dulaney*, 295 A.2d 328 (1972)).

[26]Both Petitioner and Ms. Pacheco testified that they have known each other since childhood.  Petitioner specifically testified that he and Ms. Pacheco were boyfriend and girlfriend on and off since he was 11 or 12.  Trial Tr. vol. 2, 32-33, Jan. 30, 2001.

[27]Receipt of the Miranda warning is determinative to the constitutional issue.  U.S. v. Massey, 687 F.2d 1348, 1353 (10th Cir. 1982).

[28]We note that even if the jury was aware that Petitioner had invoked his right to remain silent, our decision would remain unchanged, as *Doyle* does not extend to questions posed to a non-defendant regarding what the defendant did or did not tell a witness or actions a defendant asks the witness to take.

-10-

Even if there were a *Doyle* error, there is no doubt with this Court that it had no substantial and injurious effect or influence in determining the jury's verdict, especially in light of eyewitness testimony identifying Petitioner as the robber.  Ms. Lee, a victim of the robbery, testified that prior to the robber leaving the business, he removed his mask, exposing his face.  When Ms. Lee asked the robber for the credit cards and receipts, the robber turned around and faced Ms. Lee, where she was able to clearly view the robber.  Ms. Lee was able to later positively identify Petitioner as the robber both in a photographic lineup and during the trial.[29]  Mr. Lee also observed the robber leave in a car that was later found to belong to Petitioner's girlfriend, Ms. Pacheco.  Ms. Pacheco testified that she did not have possession of her car at the time of the robbery; rather, to her knowledge Petitioner had possession of the car.  In addition, the car was not parked out in front of the business, but was parked behind it out of direct view, which tends to indicate that the robber had some intention of preventing or at least decreasing the likelihood that the "getaway car" would be seen to allow an identification.  Given the testimony and the eyewitness identification, the Court has no "grave doubt" that such *Doyle* error as described by Petitioner had no substantial or injurious effect or influence in the jury's verdict so as to require reversal.  Petitioner's request for relief on this issue is denied.

### b.  Prosecutor's Comments During Closing Argument

Petitioner argues that the prosecutor committed misconduct by commenting on Petitioner's post-*Miranda* silence during closing argument, and by telling the jury that the sole issue in the case was to decide why Petitioner did not tell the police about Mr. Cheney having possession of the car, again violating Petitioner's right to a fair trial.  Defense counsel did not object during the

---

[29]Trial Tr. vol. 1, 216-17, Jan. 29, 2001.

prosecutor's closing argument.  On direct appeal, the Kansas Court of Appeals reviewed this issue despite a lack of contemporaneous objection and absent the appellate court's analysis of a *Doyle* error.  On review, the Kansas Court of Appeals found no prosecutorial error.  As we find no *Doyle* error, we review this issue in the same context as did the Kansas Court of Appeals.

In considering a claim of prosecutorial misconduct on federal habeas review, the question is whether the prosecutor's conduct was so egregious as to render the entire proceedings fundamentally unfair.[30]  Federal habeas relief addresses only egregious misconduct that would amount to a constitutional denial of due process.[31]  The Kansas Court of Appeals evaluated Petitioner's claim based on the test set forth in *State v. Pabst*,[32] which follows federal law. Following this standard, the court found that the prosecutor did not "cross the boundary into reversible error."[33]  The Kansas Court of Appeals' ruling on this issue was not contrary to and did not involve an unreasonable application of United States Supreme Court precedent.  Therefore, Petitioner is not entitled to habeas relief on this ground.

### c.  Prosecutor's argument before the Kansas Court of Appeals

Petitioner asserts that the prosecutor committed misconduct when he argued before the

---

[30]*Short v. Sirmons*, 472 F.3d 1177, 1195 (10th Cir. 2006) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 642-48 (1974)); *see also Smith v. Phillips*, 455 U.S. 209, 219 (1982) (touchstone of due process analysis in alleged prosecutorial misconduct is fairness of trial, not culpability of prosecutor).

[31]*Smith*, 455 U.S. at 221.

[32]268 Kan. 501, 996 P.2d 321 (2000).  The *Pabst* test requires a two-prong analysis.  First, the court must decide whether the remarks made by the prosecution were outside the considerable latitude the prosecutor is allowed when discussing the evidence.  *Id.* at 505, 996 P.2d at 325.  Next, the court must decide whether the remarks are so gross or flagrant as to prejudice the jury against the accused and deny a fair trial.  *Id.*  When analyzing prejudice, the court must consider whether: (1) the misconduct is so gross and flagrant as to deny the accused a fair trial; (2) the remarks show ill will on the part of the prosecutor; and (3) the evidence against the defendant is of such a direct and overwhelming nature that the misconduct would likely have little weight in the minds of the jurors.  *Id.* at 508, 996 P.2d at 327.

[33]*Honeycutt*, No. 87497, at *15.

Kansas Court of Appeals that there was no issue concerning questioning regarding Petitioner's post-arrest, post-*Miranda* silence during trial because Petitioner's assertion of his right to remain silent was not before the jury.   Petitioner first presented this argument through his 60-1507 hearing; however, the state district court declined to address any issues regarding prosecutorial misconduct because the Kansas Court of Appeals had already previously ruled on the issue.   Nevertheless, based on this Court's discussion and decision that no *Doyle* error concerning post-*Miranda* silence occurred during trial, we find that the prosecutor committed no error on appeal.

## 2.  Ineffective Assistance of Counsel

Petitioner argues that he was denied the effective assistance of counsel.   Specifically, Petitioner cites his counsel's failure to object to the prosecutor's questioning of a witness regarding Petitioner's post-*Miranda* silence, and counsel's failure to object to the prosecutor's arguments during closing regarding his post-*Miranda* silence.   Petitioner further asserts that his counsel's failure to object to the foregoing resulted in the Kansas Court of Appeals accepting the prosecutors statements made in closing argument as proper.   After his 60-1507 hearing, the state district court denied Petitioner's ineffective assistance of counsel claim, and the Kansas Court of Appeals upheld the trial court's ruling.

A petitioner alleging ineffective assistance of counsel in violation of the Sixth Amendment must show: (1) trial counsel was deficient, i.e., "counsel's representation fell below an objective standard of reasonableness"; and (2) the deficiency prejudiced his defense, i.e., "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[34]   "There is a strong presumption that counsel's performance falls within the wide range

---

[34]*Boyle v. McKune*, 544 F.3d 1132, 1137 (10th Cir. 2008) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

of professional assistance; the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy."[35]  A reviewing court must apply "a heavy measure of deference to counsel's judgments" in assessing the reasonableness of a particular decision.[36]  "[W]here it is shown that a particular decision was, in fact, an adequately informed strategic choice, the presumption that the attorney's decision was objectively reasonable becomes 'virtually unchallengeable.'"[37]

Petitioner argues that his trial counsel's performance was deficient because he failed to object to the prosecutor's questioning and comments regarding his post-*Miranda* silence both during the questioning of a witness and at closing argument.  In light of the foregoing discussing on *Doyle* error, and based on the trial transcript and testimony from counsel during Petitioner's post-conviction hearing,  we reject Petitioner's claims.

In testimony at the post-conviction hearing before the trial court, Petitioner's counsel identified several reasons for not objecting to the prosecutor's arguments.  First, counsel did not believe that the questions being asked by the prosecutor justified an objection because the questions did not arise to a *Doyle* error.  Further, counsel indicated that he was aware that the prosecutor had other witnesses who could provide the same information, and he made the strategic decision to not object.  After hearing the arguments, the trial court found that trial counsel's actions were based on sound trial strategy and was not ineffective.  We agree.

---

[35]*Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 688-89).

[36]*Strickland*, 466 U.S. at 691.

[37]*Bullock v. Carver*, 297 F.3d 1036, 1046 (10th Cir. 2002).

Petitioner's trial counsel testified during the 60-1507 hearing that he is an experienced trial attorney with knowledge of what constitutes a Doyle error.  He also testified that he reviewed the case file, knew who the prosecution could call to testify to the same information, and did not object due to strategic reasons.  Accordingly, the Kansas Court of Appeals found that trial counsel's performance was objectively reasonable and not deficient.

The court continued its analysis to find that even if trial counsel's performance was deficient, Petitioner has failed to demonstrate prejudice.  We once again agree with the court's analysis.  After reviewing the record, this Court, as did the Kansas Court of Appeals, finds no indication that an objection by trial counsel would have altered the jury's verdict, nor would it have altered the appellate court's review.  The Kansas Court of Appeals did not address the issue concerning *Doyle* error simply because the issue was not properly before it; however, we have no doubt that the Kansas Court of Appeals would have reached the same result as this Court in its *Doyle* analysis, and therefore, its holding would have been the same.

Accordingly, based on this Court's review of the record, we find that the Kansas Court of Appeals' ruling was not contrary to and did not involve an unreasonable application of United States Supreme Court precedent.  Petitioner's request for relief on the issue of ineffective assistance of counsel is denied.

Accordingly,

**IT IS THEREFORE ORDERED** that Petitioner's Motion for Writ of Habeas Corpus (Doc. 1) is hereby DENIED.

**IT IS SO ORDERED.**

Dated this 3rd day of April, 2009, in Wichita, Kansas.


/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE